#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF SOUTH CAROLINA
#### GREENVILLE DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | Criminal Action No.: 6:11-cr-00338-JMC-10 |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| ) | |
| David Rollison, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Defendant David Rollison is a prisoner currently serving a sentence of 120 months in the Bureau of Prisons ("BOP"). (ECF No. 1148.) This matter is before the court on Defendant's Motion for Compassionate Release. (ECF No. 1986.) For the reasons set forth below, the court **DENIES** Defendant's Motion for Compassionate Release. (*Id.*)

### I.     RELEVANT BACKGROUND

On August 17, 2011, the Government charged Defendant in a Third Superseding Indictment with conspiracy to possess with intent to distribute cocaine, crack cocaine, and marijuana in violation of 21 U.S.C. § 846 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(D). (ECF No. 722 at 2.) Additionally, the Government charged Defendant with knowingly and intentionally using a communication facility, that is, a telephone to facilitate the commission of a felony under the Controlled Substances Act in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. (ECF No. 722 at 5-6.) On September 20, 2011, Defendant pleaded guilty to the charge of conspiracy with intent to distribute cocaine, crack cocaine, and marijuana, and the Government agreed to dismiss the other remaining charges in the Indictment. (ECF No. 810 at 1, 3.) Defendant entered his plea on November 28, 2011. (ECF No. 970 at 1.) On March 21, 2012, the court sentenced Defendant to 120 months of imprisonment. (ECF No. 1148.) The sentence

1

runs consecutive to Defendant's sentence in 6:11-cr-00617 (carrying handguns and interfering with the commencement of a robbery), for which he received 82 months of imprisonment. (ECF No. 1148.) On July 6, 2015, Defendant filed a Motion to Reduce Sentence. (ECF No. 1703.) The court denied the Motion on August 7, 2015. (ECF No. 1728.) Defendant is currently incarcerated at Victorville Medium I Federal Correctional Institution ("Victorville") in Victorville, California and is projected to be released on December 4, 2023. *See Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited Jan. 24, 2022).

Defendant filed the instant *pro se* Motion for Compassionate Release on August 5, 2021. (ECF No. 1986.) Defendant contends he should be released because he was recently diagnosed with prostate cancer and is not receiving adequate treatment in prison. (*Id.* at 2.) Additionally, Defendant claims his diagnosis places him at a greater risk of complications if he contracts COVID-19. (*Id.* at 3.)

## II.     LEGAL STANDARD

With limited exceptions, the court may not modify a sentence once it has been imposed. 18 U.S.C. § 3582(c). One exception is the doctrine of compassionate release, which permits the court to reduce a sentence in extraordinary and compelling circumstances. "As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence for 'extraordinary and compelling reasons' 'upon motion of the Director of the Bureau of Prisons' or 'upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" *United States v. Feiling*, 453 F. Supp. 3d 832, 837 (E.D. Va. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i)).

"By its plain language, § 3582(c)(1)(A) requires defendants to first exhaust administrative remedies or wait thirty days after requesting that the warden of their facility file a motion for a sentence reduction; however, courts have waived this requirement when enforcing it would prove futile." *Id.*; *see also United States v. Kibble*, 992 F.3d 326, 330 n.2 (4th Cir. 2021).

"Extraordinary and Compelling Reason[s]" for release are—in part—defined in application notes (1)(A-D) of U.S.S.G. § 1B1.13. These reasons include whether (A) defendant suffers from a terminal illness, serious medical condition, serious functional or cognitive impairment, or deteriorating mental or physical health due to age which renders them unable to provide self-care; (B) defendant is a defined age or has served a defined percentage of their sentence; (C) certain family circumstances compel the court; or (D) there exists some "other" extraordinary and compelling reason. *See id.* The policy statement further provides that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason . . . ." U.S.S.G. § 1B1.13 cmt. n.3.

As the plain language of § 1B1.13 applies only to motions brought by the BOP on the defendant's behalf, it is not applicable to motions for compassionate release brought by the defendant on their own behalf. *United States v. McCoy*, 981 F.3d 271, 281–83 (4th Cir. 2020). While the policy statements "remain helpful guidance" in evaluating defendant's own motions, courts retain the discretion to make their own independent determinations of what constitutes an "extraordinary and compelling reason[]" under § 3582(c)(1)(A). *Id*; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020).

After discerning whether extraordinary and compelling reasons exist, the court considers § 3553(a)'s sentencing factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences

available; (4) the sentencing range established per the applicable guidelines; (5) any pertinent policy statement by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *Id*.

Finally, the court may consider whether a person presents a "danger to the safety of any other person or the community" under the balance of four (4) factors: (1) the nature and circumstances of the offense, with attention to the instant crime's level of violence or involvement with a controlled substance; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger posed to any person or the community upon the defendant's release. 18 U.S.C. § 3142(g).

### III.     ANALYSIS

Upon its review, the court observes that Defendant did not exhaust his administrative remedies prior to filing his Motion; however, Defendant did wait thirty (30) days after requesting that the warden of his facility file a motion for a sentence reduction before filing the instant Motion. Defendant submitted his request for compassionate release to the Associate Warden at Victorville on May 27, 2021. (ECF No. 1986-1 at 1.) More than thirty (30) days passed before Defendant filed the instant Motion for Compassionate Release on August 5, 2021. (ECF No. 1986 at 1.) Because Defendant filed a request for release with the BOP thirty (30) days before filing his Motion for Compassionate Release, Defendant may proceed with his instant Motion. (ECF No. 1986 at 1.)

However, Defendant's present circumstances do not merit compassionate release. "In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease

4

and a particularized risk of contracting the disease at his prison facility." *Feiling*, 453 F. Supp. 3d 832 at 841.  The mere existence of COVID-19 in society, and the possibility that it may spread throughout a particular prison, alone cannot justify compassionate release. *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  Here, Defendant cannot demonstrate "extraordinary and compelling" reasons for his release because he has not shown a particularized susceptibility to COVID-19.

Defendant asserts that his prostate cancer places him at a greater risk of complications if he contracts COVID-19.  (ECF No. 1986 at 2.)  Cancer does appear to subject him to a greater risk of complications from COVID-19.  The Centers for Disease Control ("CDC") lists cancer as a condition that places some at an increased risk of becoming "severely ill" from COVID-19.  *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 24, 2022).  However, in his request to the Warden, Defendant notes that his "health conditions are manageable."  (ECF No. 1986-1 at 1.)  Additionally, contrary to Defendant's argument that he is not receiving medical care for his prostate cancer, Defendant himself submitted medical documentation to the court that shows that Defendant's cancer is being treated.  (ECF No. 1986-1 at 3-7.)

Even assuming that Defendant is particularly vulnerable to COVID-19 because of his medical conditions, he has failed to show that he has a particularized risk of contracting the virus at Victorville.  Although 498 inmates have contracted COVID-19 at Victorville since the pandemic began, currently only seventy (70) inmates and twenty-five (25) staff are positive.  *See BOP COVID-19 Cases*, https://www.bop.gov/coronavirus/index.jsp (last visited Jan. 24, 2022).  The facility has only had two (2) deaths since the pandemic began.  *Id.*  Additionally, the facility has determined its operational level is Level 3, so the facility is actively modifying operations to

combat COVID-19. *See BOP COVID-19 Operational Levels,* https://www.bop.gov/coronavirus/covid19_modified_ operations_guide.jsp (last visited Jan. 24, 2022). Defendant contends that he will move back to South Carolina if he is released from prison; however, given that South Carolina has reported nearly one million COVID-19 cases and over 13,000 COVID-19 related deaths since the pandemic began, the court cannot say that Defendant would be any safer on supervised release in South Carolina than he is at his current facility. *See South Carolina COVID-19 Data and Dashboards*, https://scdhec.gov/covid19/covid-19-data (last visited Jan. 24, 2022).

Furthermore, the factors enumerated in § 3553(a) weigh against Defendant's release. Defendant committed the crime that he is currently incarcerated for, conspiracy to possess with intent to distribute cocaine, crack cocaine, and marijuana, despite being previously convicted of other charges. Additionally, Defendant's current sentence runs consecutively to his sentence in 6:11-cr-00617 for carrying handguns and interfering with the commencement of a robbery. (ECF No. 1148.) Given Defendant's pattern of committing crimes while out of custody, the court finds that Defendant's criminal history counsels against his release. Also, the court is concerned with the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. Defendant was charged in relation to a conspiracy that involved at least twenty (20) other defendants. Releasing Defendant would create unfair sentencing disparities among these twenty (20) other defendants.

Since Defendant cannot demonstrate "extraordinary and compelling reasons" for his release, the court **DENIES** his Motion for Compassionate Release. (ECF No. 1986.)

## IV.     CONCLUSION

After a thorough review, the court **DENIES** Defendant's Motion for Compassionate Release.  (ECF No. 1986.)

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

January 31, 2022
Columbia, South Carolina

7